THE STATE OF OHIO, APPELLEE, *v.* BOTSCH, APPELLANT.

(No. OT-88-32—Decided February 3, 1989.)

Daniel J. Boldt, for appellee.
Richard McMannis, for appellant.

*Per Curiam.* This matter is before the court on appeal from a judgment of the Port Clinton Municipal Court.

Defendant-appellant, Raymond M. Botsch, was arrested on August 1, 1987 for operating a watercraft under

the influence of alcohol with a blood-alcohol content over the legal limit, a violation of R.C. 1547.11(A)(4). Appellant entered a plea of not guilty and filed a motion to dismiss alleging that the arresting officer did not have probable cause to stop and board appellant's boat. The motion was denied subsequent to a hearing. Appellant changed his plea to no contest and was found guilty on April 29, 1988. A notice of appeal was timely filed.

Appellant contends in his sole assignment of error that:

"The Trial Court erred in not granting the motion to suppress because the officer did not have probable cause to stop and board Appellant's boat."

This court has carefully considered and examined the entire record in the instant case. We have also considered the law which relates to the issue raised in this appeal. Such review compels this court to the conclusion that the findings of fact, conclusions of law and judgment entry prepared by trial court Judge Paul C. Moon in regard to the motion to dismiss (suppress) are in all respects a complete and proper recitation of the facts and law which apply to this case and that said judgment is correct. We hereby adopt and incorporate such findings.

We, therefore, find appellant's assignment of error not well-taken and accept the findings and reasoning of the lower court as our own and enter judgment accordingly, affirming the judgment of the trial court. See findings of fact, conclusions of law and judgment entry dated January 26, 1988, attached as the Appendix.

On consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Port Clinton Municipal Court is affirmed. Costs to appellant.

*Judgment accordingly.*

HANDWORK, P.J., CONNORS and GLASSER, JJ., concur.

## APPENDIX

PAUL C. MOON, J. This matter was tried to the court on December 4, 1987, on defendant's motion to dismiss. Defendant's motion states the following causes for the request of dismissal:

1. R.C. 1547.08(B) is impermissibly vague, void and unconstitutional.

2. Stopping defendant's boat and boarding the same for a wake violation was improper under both the Ohio and United States Constitutions.

3. The random safety inspection stop and boarding of defendant's boat violated his constitutional rights under the United States and Ohio Constitutions.

4. The officer had no probable cause or a reasonable and articulable suspicion to believe that defendant was committing a misdemeanor in his presence.

The facts presented at the hearing indicate that on August 1, 1987 during the daylight hours defendant was operating his twenty-six-foot Wellcraft cigarette-type boat in West Harbor. West Harbor is an inlet from Lake Erie lying entirely within Ottawa County, Ohio. The main body of the harbor is about two miles long and has a width of one-fourth to one-half mile narrowing to one hundred to two hundred yards in some places. The harbor has a channel marked by the federal government. It is the site of some twelve marinas along its shores and the mooring place for three thousand to five thousand boats. During the boating season there is constant traffic to and from Lake Erie. The entire navigable portion of the harbor is a designated "No Wake" area marked by "No Wake" signs at each of the marinas, signs along the shore, and on

state-maintained buoys in the channel or the harbor. The buoys are in a line in the center of the channel, one visible from the next, are white and orange, three to five feet above the water line, and are marked "No Wake" in large black letters. For placement and location of the "No Wake" buoys, see court's Exhibit A attached hereto (Application for Department of the Army Permits to Place No Wake Buoys and Easement of Navigation, March 18, 1975, Proceedings of the Ottawa County Commissioners, of which the court takes judicial notice).

Ohio Adm. Code 1501:47-3-14 defines "wake" as "a track left by a watercraft in the water causing waves that may cause discomfort, injury, or damage to persons, watercraft, or property."

On the date and time in question defendant's boat was observed proceeding through the line of channel "No Wake" buoys toward a watercraft operated by officers of the Ohio Division of Watercraft at a distance of about two hundred yards. Defendant was about fifty to one-hundred yards from several marinas on the south side of the harbor and about one mile from Lake Erie, proceeding with his bow elevated, making a wake. The officers felt the operation of the craft was unreasonable in that the wake created would rock boats in the marinas and at gas docks in the area. Accordingly, defendant was identified as the operator of the craft and stopped for a "No Wake" violation. The officers boarded the boat without permission ostensibly to make a safety inspection. No safety violations were found and no tickets were issued for any wake violation although upon boarding the craft the officers noticed a moderate odor of alcohol. It is not clear whether the odor emanated from the defendant operator or from passengers as a group, but further investigation indicated that no one on the boat was sober, nor did anyone know how to operate the craft; thus, the officers moved the craft to shore. Before the craft was moved, defendant was administered the gaze nystagmus test and the officer concluded that the defendant did indeed have alcohol in his system. After the officers moved the craft to the shore, defendant was arrested and charged with a violation of R.C. 1547.11, operating a watercraft while under the influence of alcohol and, after administration of a breath test, R.C. 1547.11(A)(4), the breath *per se* violation.

Defendant claims the stopping of the boat for a "No Wake" violation was improper because R.C. 1547.08(B) is unconstitutionally vague, thus void. This court has previously held that the portion of R.C. 1547.08(B) prohibiting the creation of a wake "near any marina, boat docking facility, boat gasoline dock, launch ramp, recreational boat harbor, or harbor entrance * * *" is in fact void for the reason that no reasonable person could properly determine the prohibited conduct by reference to the clearly vague term "near." Given the nature of water, boats, boating, and the sea, matters dealing with the same will probably always be determined with less precision than usually applied in motor vehicle traffic cases, but the term "near" is not clear and precise enough to prohibit, thus not sufficient to charge, a defendant. However, R.C. 1547.08(B) also prohibits the creation of a wake "within any area buoyed or marked as a no wake area." The court feels that proscription is sufficiently precise and informative to advise a reasonable boat operator of particular conduct and is a valid legislative enactment. Defendant was in fact creating a wake while proceeding through the line of clearly marked "No Wake" buoys and thus his stop was valid. That he was not later charged with a no wake violation does not invalidate the stop.

Was the boarding of defendant's boat to make a routine safety inspection without a warrant valid? R.C. 1547.521(C) provides that state watercraft officers "[m]ay, for the purpose of enforcing the laws and rules which they have the duty to enforce, stop, board, and conduct a safety inspection of any watercraft." These powers are not dissimilar to those provided the Ohio Highway Patrol in conducting the inspection of motor vehicles, see R.C. 4513.02, the principal difference being the authority of the Division of Watercraft to board the boat or vessel. Again, the exigencies of the sea render an inspection duty fruitless without the ability to board. A watercraft simply cannot be effectively inspected from another vessel while the two are bobbing about in the water. Watercraft safety is a difficult and serious matter and that interest must be balanced against the historical admiralty notion that a watercraft somehow attains special status as an individual, *e.g.*, subject to suit (see R.C. 4585.01 *et seq.*) and the beneficiary of certain rights as argued here, *e.g.*, it may not be boarded without a warrant. The right of the state to board and inspect any watercraft is essentially similar to other such rights of inspection and entry without a warrant contained in the wildlife code (see R.C. 1531.13) and in the liquor enforcement code (see R.C. 4301.10), both areas of compelling state interest akin to the interest of the state in maintaining the high standards of watercraft and motor vehicle safety.

The state officers had a clearly articulable reason for stopping the defendant's watercraft and the right to board and inspect. The evidence gathered thereafter, *i.e.*, odor of alcohol, gaze nystagmus results and the condition of all on board, gave solid foundation for probable cause to arrest. The totality of the circumstances justified the stop, the boarding and subsequent arrest, and the testing of the defendant. *Atwell* v. *State* (1973), 35 Ohio App. 2d 221, 64 O.O. 2d 342, 301 N.E. 2d 709.

Accordingly, defendant's motion to dismiss (motion to suppress) is denied. Although the defendant has filed a motion to dismiss, it is clear that the appropriate remedy, *if warranted,* would be the suppression of evidence. *Frisbie* v. *Collins* (1952), 342 U.S. 519.