Argued and submitted November 14, 2002, at University of Oregon, Eugene, reversed and remanded March 27, 2003

## STATE OF OREGON,
*Respondent,*

*v.*

## DAVID LECARROS,
aka David Le Caros,
*Appellant.*

## 00-06-47895; A113837

66 P3d 543

Michael A. Rees argued the cause for appellant. With him on the brief was Metropolitan Public Defender Services, Inc.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals from his conviction for operating a boat while he was under the influence of intoxicants. He assigns error to the trial court's denial of his motion to suppress evidence seized by law enforcement officers after they stopped him, at random and without suspicion, to conduct a safety inspection. We reverse and remand.

The facts are few and undisputed. Three Multnomah County deputy sheriffs in a clearly marked police boat were patrolling a body of water known as the Multnomah Channel when they decided to conduct a random safety inspection of defendant's cabin cruiser pursuant to ORS 830.035(1). That statute provides:

> "The sheriff of each county and all other peace officers shall be responsible for the enforcement of [ORS chapter 830, Small Watercraft] and any regulations made by the State Marine Board pursuant thereto. In the exercise of this responsibility, a peace officer may stop any boat and direct it to a suitable pier or anchorage for boarding."

The officers guided their boat to a position parallel to defendant's and about two feet from it. They then reached out and "hung on to" defendant's boat while asking to see his safety equipment and registration. He showed them life jackets, fire extinguishers, and other equipment, but he could not produce the paperwork because, he said, it was on shore in his van. The deputies then ordered him to take the boat to its dock so he could retrieve the papers. As they spoke with him and observed him operating the boat, they developed the suspicion that he was under the influence of alcohol. On shore, they administered several sobriety tests. He failed and was subsequently arrested for operating a boat while under the influence of alcohol, a Class A misdemeanor. ORS 830.325(1); ORS 830.990(5).

At trial, defendant moved for exclusion of all the evidence obtained as a result of his encounter with the deputies, arguing that the evidence derived from a "stop" that was

unlawful under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. If the stop was for purposes of criminal law enforcement, he maintained, it was unlawful because the officers did not have any suspicion of criminal conduct. If the stop was administrative or regulatory, it was unlawful because no statute or rule imposed limits on officer discretion. The trial court denied his motion.

Before this court, defendant renews those arguments. The state, in response, raises two theories that it did not raise at trial: first, that the encounter was not a stop at all but merely an instance of police-citizen interaction that did not trigger constitutional protections; and second, that Article I, section 9, does not apply to searches or seizures of boats.

■■ Generally, this court will not consider an issue that the trial court did not have the opportunity to consider in the first instance. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000); *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). However, if the new issue is raised on appeal by the party that prevailed at trial and it affords an alternative basis for affirming the judgment below, then—again, generally—the appellate court may consider it. *State v. Rogers*, 330 Or 282, 295, 4 P3d 1261 (2000). There are a number of exceptions to this so-called "right for the wrong reason" doctrine, one of which is relevant here. The appellate court will not consider an alternative ground for affirmance if the losing party at trial could have developed a materially different factual record had the alternative theory been raised. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001).

■ Guided by those precepts, we decline to address the state's argument that the encounter between the deputies and defendant was not a stop. The prosecutor never argued that the encounter was not a stop. In fact, on several occasions the trial court referred to the encounter as a "stop" without objection or correction by the prosecutor, and the prosecutor himself stated, "I am prepared to argue * * * that in this case the normal sort of traffic style stop which ripened into an investigation was present."

■  Had the state argued that the encounter was not a stop, defendant could have made a different record. A stop for purposes of triggering the protections of Article I, section 9, occurs

> "(a)  if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances."

*State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991) (footnote omitted). Thus, had the issue arisen, defendant's counsel could have attempted to adduce evidence of the physical circumstances surrounding the encounter, for example, who said what and to whom, how long the officers detained defendant, and whether they were armed. More importantly, defendant's counsel could have questioned the deputies to determine whether they intended to restrict defendant's freedom of movement and could have questioned defendant to determine whether he believed that they had done so. Instead, the evidence relating to what physically occurred during the encounter consisted of two facts: The officers pulled alongside defendant's boat, and they held on to it. There is no testimony at all regarding any participant's state of mind. In short, the state both actively asserted and passively acknowledged that the encounter *was* a stop; as a result, defendant had no need or motive to adduce those facts that would allow us to evaluate the state's new argument that it was *not* a stop. Under those circumstances, we will not consider the state's argument on appeal.

■  We will, however, consider the state's argument that Article I, section 9, does not impose limits on the state's authority to seize and search boats. That argument involves a pure question of law; defendant's lack of opportunity to adduce particular facts is therefore irrelevant. *Outdoor Media Dimensions Inc.*, 331 Or at 659 (appellate court will consider unraised arguments for affirmance where the issue is "purely one of law").

The state derives its "boat exception" theory from two sources: the Oregon Supreme Court's recent emphasis on

history as the most important source of constitutional interpretation, *see, e.g., Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), and *United States v. Villamonte-Marquez*, 462 US 579, 103 S Ct 2573, 77 L Ed 2d 22 (1983), a United States Supreme Court decision under the Fourth Amendment. According to the state, *Villamonte-Marquez* teaches that the authors of the Bill of Rights (that is, the members of the First Congress) could not have intended the Fourth Amendment to prohibit government officials from conducting suspicionless, warrantless searches of boats, because the same Congress also enacted a statute permitting customs officials to do just that. Further, the argument continues, it is reasonable to conclude that when the framers of the Oregon Constitution enacted Article I, section 9, they shared that understanding. Hence, Article I, section 9, does not limit government officials' plenary authority to seize and search boats.

■     We find this argument unpersuasive for two reasons. First, it overstates the reach of *Villamonte-Marquez*. The statute under review in that case deals with customs officials boarding vessels in order to guard against the importation of untaxed goods, and the Court justified the statute's constitutionality by invoking the importance of that particular regulatory purpose and others involving commercial "documentation." *Villamonte-Marquez*, 462 US at 591. Further, and relatedly, the Court carefully limited its holding to vessels boarded "in waters providing ready access to the open sea." *Id.* at 581. Thus, the exception that the authors of the Fourth Amendment assertedly intended encompasses searches and seizures by customs officials and others engaged in commercial regulation. Even if the authors of Article I, section 9, shared the same intention, it would not immunize either the statute purportedly authorizing the seizure in this case, which is part of a regulatory scheme addressing boating safety and authorizing searches only for that purpose, or the seizure itself, which, likewise, had nothing whatsoever to do with smuggling, registration, or trade.

Second, without some evidence that the Oregon framers shared the First Congress's alleged understanding that constitutional search and seizure protections did not

extend to boats, we cannot apply the holding of *Villamonte-Marquez* to Article I, section 9. The state candidly concedes that it has found no such evidence, and neither have we. We therefore will not declare a boat-boarding exception.

■     Having decided that the search in this case falls within the scope of Article I, section 9, we readily conclude that the trial court erred in denying defendant's motion to suppress. A search or seizure may serve either criminal law enforcement purposes or civil regulatory purposes. *Nelson v. Lane County*, 304 Or 97, 105-06, 743 P2d 692 (1987). Defendant argues that the search in the present case was criminal in nature and therefore, because it was conducted without a warrant and without individualized suspicion, it was *per se* unreasonable. We agree that if it was a criminal search it was, as defendant maintains, unlawful. *State v. Boyanovsky*, 304 Or 131, 134, 743 P2d 711 (1987). However, we need not attempt to classify the search because, even if it was administrative, it was unlawful.

■     In order to survive scrutiny under Article I, section 9, an administrative search or seizure must be conducted under

"a 'source of the authority,' that is, a law or ordinance providing sufficient indications of the purposes and limits of executive authority, and [be] carried out pursuant to 'a properly authorized administrative program, designed and systematically administered' to control the discretion of non-supervisory officers."

*Nelson*, 304 Or at 104 (citing *State v. Atkinson*, 298 Or 1, 9, 10, 688 P2d 832 (1984)). Clearly, ORS 830.035(1) suffices as a source of legal authority to conduct the seizure. Further, that statute authorizes the State Marine Board to promulgate implementing regulations. However, neither that agency nor any other governmental entity has created rules to limit the discretion of these Multnomah County officers in carrying out boat searches or seizures, nor could the officers articulate any such rules. Indeed, their uncontradicted testimony establishes that the decision to seize or not to seize any particular craft was entirely within their discretion. So long as ORS 830.035(1) is not supplemented by rules governing its enforcement so as to eliminate officer discretion, it cannot lawfully authorize warrantless, suspicionless seizures. The

seizure therefore violated defendant's rights under Article I, section 9, and his motion to suppress should have been granted.

Reversed and remanded.