The STATE of Ohio, Appellee,

v.

CARR, Appellant.

[Cite as *State v. Carr*, 173 Ohio App.3d 436, 2007-Ohio-5466.]

Court of Appeals of Ohio,
Fifth District, Perry County.

No. 2006–CA–18.

Decided Oct. 10, 2007.

Nancy Nash Ridenour, Assistant Prosecuting Attorney, for appellee.

Dennis Pusateri, for appellant.

DELANEY, Judge.

{¶ 1} This is an appeal from the Perry County Municipal Court involving the question whether a state park officer can stop a boat to conduct a safety inspection without reasonable suspicion of wrongdoing.

{¶ 2} On June 4, 2005, defendant-appellant, Kevin M. Carr, was arrested for a violation of R.C. 1547.11, operation of a boat under the influence of alcohol. Appellant filed a motion to suppress, arguing that "[t]he Officer lacked reasonable and articulable suspicion based on specific and articulable facts that the Defendant had been or was engaged in criminal activity, and therefore the Officer conducted an unreasonable/illegal seizure of the Defendant when the officer made the initial stop or detainment of the Defendant." Appellant cited *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 3} The following facts are taken from the testimony at the suppression hearing before the trial court on November 1, 2005:

{¶ 4} Park Officer Greg Bushee of the Ohio Department of Natural Resources was on routine patrol on the waters of Buckeye Lake State Park in Perry County, Ohio. Officer Bushee stopped appellant's pontoon boat to conduct a safety inspection. He explained that a "safety inspection" involves checking for life jackets, safety equipment, fire extinguisher, and boat registration. Upon stopping the boat, he observed approximately five to ten cans of alcoholic beverage on the floor of the boat. The officer advised appellant that it is illegal to consume alcoholic beverages on state waters. Officer Bushee requested appellant's registration. Officer Bushee noticed the smell of alcohol on appellant and noticed that his eyes were bloodshot and glassy. The officer determined that appellant was possibly under the influence of alcohol. Officer Bushee requested that appellant proceed to shore for field sobriety tests. On shore, Officer Bushee performed the one-leg-stand and heel-to-toe field sobriety tests. Officer Bushee signaled Corporal Edwards of the Buckeye Lake Police Department to perform the HGN (horizontal gaze nystagmus). Officer Bushee arrested appellant for a violation of R.C. 1547.11, operating a vessel under the influence of alcohol.

{¶ 5} It was the state's position at the suppression hearing that Officer Bushee was permitted to stop appellant's boat without articulable reasonable suspicion of

any illegal activity based upon R.C. 1547.521(A)(4). The statute provides: "[S]tate watercraft officers: * * * For the purpose of enforcing laws and rules that they have the authority to enforce, may stop, board, and conduct a safety inspection of any vessel."

{¶ 6} The trial court suppressed the HGN test results, but found the remaining field sobriety tests to be in substantial compliance with the Ohio Department of Health ("ODH") standards. Later, the trial court issued an amended entry also finding that there was probable cause to arrest appellant for intoxication.

{¶ 7} On March 28, 2006, the trial court orally overruled the remaining prong of appellant's motion to suppress on the issue of the initial stop of the boat. The trial court found that the officer was authorized to stop the boat for a "safety check/search."

{¶ 8} Appellant pleaded no contest to the charge and was fined $450 and sentenced to 60 days of incarceration. The trial court suspended 55 days of incarceration and ordered appellant to serve two days of actual incarceration and three days in a driving intervention program. Defendant also was placed on probation for two years.

{¶ 9} Appellant appeals, raising a single assignment of error:

{¶ 10} "I. The trial court erred by overruling defendant-appellant's motion to suppress."

{¶ 11} In his sole assignment of error, appellant argues that the initial stop of the boat was without suspicion of wrongdoing and therefore in violation of the Fourth Amendment to the U.S. Constitution.[1]

{¶ 12} An appellate court's review of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583. We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. See *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. However, with respect to the trial court's conclusions of law, we must apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. An appellate court must independently determine, without deference to the trial

---

1. Appellant also submits that certain field tests conducted by the officers did not substantially comply with the ODH regulations. However, we need not address this issue in light of our disposition of appellant's argument that the initial stop of the boat violated the Fourth Amendment.

court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726.

{¶ 13} The issue before this court is whether reasonable, articulable suspicion of illegal activity was required for Officer Bushee to stop appellant's boat in order to conduct a safety inspection pursuant to R.C. 1547.521(A)(4). This appears to be a case of first impression. In other Ohio cases, reasonable suspicion existed for state officers to make an initial stop of a vessel based upon observed violations of state watercraft laws.

{¶ 14} In *State v. Botsch* (1989), 44 Ohio App.3d 59, 541 N.E.2d 489, the Sixth District Court of Appeals addressed a watercraft stop under R.C. 1547.521. In that case, officers with the Ohio Division of Watercraft observed a boat proceeding through a No Wake zone at an unreasonable speed. The officers felt that the operation of the craft was unreasonable in that the wake created would rock boats in the marinas and at gas docks in the area. The officers stopped the boat and boarded it without permission, ostensibly to make a safety inspection. Upon boarding the boat, the officers noticed a moderate odor of alcohol. The officers performed field sobriety tests on the operator of the vehicle. The court found that the officers had reasonable suspicion to stop the boat due to the defendant's wake in a No Wake zone.

{¶ 15} See also *State v. LePard* (1989), 52 Ohio App.3d 83, 557 N.E.2d 166 (operation of a watercraft at night without lights); *State v. Morrissey*, Hamilton App. Nos. C–930065, C–930066, and C–92CRB–31680 APB, 1994 WL 44403 (operation of a watercraft at night without navigational lights); *State v. Hays*, Ottawa App. No. OT–96–059, 1997 WL 430856 (erratic operation of a boat in a no-wake zone); *State v. Deters* (1998), 128 Ohio App.3d 329, 714 N.E.2d 972 (operation of boat in reverse, nearly colliding with a patrol boat, and no stern light); *Div. of Waterworks v. Ardale*, Lake App. No. 2006–L–099, 2007-Ohio-3022, 2007 WL 1732283 (operation of a watercraft at night without lights).

{¶ 16} Appellate courts from other jurisdictions have recently addressed the constitutionality of similar boating statutes. In *State v. Lecarros* (2003), 187 Or.App. 105, 66 P.3d 543, an Oregon appeals court ruled that a state statute authorizing stops of boats to enforce boating laws could not authorize a random, suspicionless stop of defendant's boat, absent supplementing rules eliminating officer discretion. In addition, a Pennsylvania appeals court in *Pennsylvania v. Lehman* (2004), 2004 PA Super 324, 857 A.2d 686, invalidated the Coast Guard's stop of a boat for a random safety check on the grounds that the stop was pretextual for investigation of criminal activity for which it had no reasonable suspicion.

{¶ 17} A different conclusion was reached by the Texas Supreme Court in *Schenekl v. State* (Tex.Crim.App.2000), 30 S.W.3d 412. The court held that since the Texas enforcement provision authorized detention only for the purpose of ensuring compliance with the boating registration and safety requirements, an intrusion was minimal in scope because the search may only be directed at the safety items listed in the statute. See also *State v. Pike* (2000), 139 N.C.App. 96, 532 S.E.2d 543.

{¶ 18} In *United States v. Villamonte–Marquez* (1983), 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22, the United States Supreme Court held that customs officials acting pursuant to a statute authorizing customs officers to board any vessel at any time and place in the United States to examine the vessel's manifest and other documents, and acting without any suspicion of wrongdoing, did not violate the Fourth Amendment by boarding a vessel that was located in waters providing ready access to the open sea in order to inspect documents. The court justified the statute's constitutionality by invoking the importance of guarding against the importation of untaxed goods and the illegal importation of aliens.

{¶ 19} In contrasting the court's earlier precedent regarding the preference for fixed checkpoints and roadblocks, the court noted: "Customs officials do not have as a practical alternative the option of spotting all vessels which might have come from the open sea * * * in order to make fixed checkpoint stops. Smuggling and illegal importation of aliens by land may, and undoubtedly * * * does, take place away from fixed checkpoints or ports of entry, but much of it is at least along a finite number of identifiable roads. But while eventually maritime commerce on the inland waters of the United States may funnel into rivers, canals, and the like, which are more analogous to roads and make a 'roadblock' approach more feasible, such is not the case in waters providing ready access to the seaward border, beyond which is only the open sea." Id. at 589, 103 S.Ct. 2573, 77 L.Ed.2d 22.

{¶ 20} In this case, Officer Bushee testified that he stopped appellant's boat for a safety inspection. Officer Bushee did not observe appellant operating the boat in violation of any watercraft laws or any other laws he had authority to enforce. R.C. 1547.521(A)(4) does not define or describe the scope of a safety inspection, and there are no limitations on the discretion of state officers in conducting those inspections. In fact, it appears that the decision whether to stop any particular watercraft is entirely within their discretion. Further, the waters of Buckeye Lake are not open to the sea, so a checkpoint is a practical alternative, as noted by the U.S. Supreme Court in *Villamonte–Marquez*.

{¶ 21} If an officer does not have reasonable suspicion to stop a watercraft, the officer may still do a safety inspection pursuant to a checkpoint system with controls and procedures in place that place limits on officer discretion. This

system would be analogous to the license and safety inspection of vehicles on roadways. See *State v. Howe* (1989), 65 Ohio App.3d 540, 584 N.E.2d 1239. Officer Bushee merely stated that he was performing a safety inspection. He did not testify that there was a properly authorized program to stop vessels in an effort to make sure boaters have the required safety equipment or are current on their registration.

{¶ 22} We hold that a park officer may perform a safety inspection pursuant to R.C. 1547.521 in only two circumstances. First, a park officer may stop a watercraft with articulable reasonable suspicion of a watercraft violation or other violation of law that they are authorized to enforce. Second, a park officer may perform a safety inspection of a watercraft if there is a particularized checkpoint procedure designed and systematically administered to limit the discretion of officers.

{¶ 23} We recognize that the state has a strong interest in ensuring boating and waterway safety for its citizens, but that interest can be realistically promoted through means other than random, sporadic stops with no limitations placed upon the officer's discretion in the field. The practicality of checkpoints either at docks or marinas or on the water (either at points of entry or no-wake zones) will depend on the specific body of water, but the use of checkpoints can be accomplished in order to decrease the intrusiveness of the stops and limit the discretion of the officers and consequent potential for abuse.

{¶ 24} We find that the motion to suppress the stop of appellant's watercraft should have been granted. Appellant's assignment of error is sustained.

{¶ 25} The judgment of the Perry County Municipal Court is reversed.

Judgment reversed.

GWIN and WISE, JJ., concur.