[Cite as *Majeski v. Majeski*, 2012-Ohio-731.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

KATHLEEN A. MAJESKI                     :

    Plaintiff-Appellant                :     C.A. CASE NO.     24668

v.                                      :     T.C. NO.     97DR343

MICHAEL C. MAJESKI                      :     (Civil appeal from Common
                                 Pleas Court, Domestic Relations)
    Defendant-Appellee               :

                                         :

. . . . . . . . . .

## O P I N I O N

Rendered on the   24th   day of   February  , 2012.

. . . . . . . . . .

KEITH R. KEARNEY, Atty. Reg. No. 0003191, 2160 Kettering Tower, Dayton, Ohio 45423
      Attorney for Plaintiff-Appellant

KEVIN D. HUGHES, Atty. Reg. No. 0065620, 20 South Main Street, Springboro, Ohio 45066
      Attorney for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

        **{¶ 1}** Plaintiff-appellant Kathleen A. Majeski appeals a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, overruling her objections and adopting the decision of the magistrate dismissing her motion to modify the

Qualified Domestic Relations Order (QDRO). In her motion to modify, Kathleen sought an order from the trial court awarding her survivor benefit rights regarding defendant-appellee Michael C. Majeski's retirement benefits. In the alternative, Kathleen requested a modified QDRO awarding her a share of Michael's retirement benefits in a separate interest QDRO which would allow Kathleen to receive benefits for the remainder of her lifetime.

**{¶ 2}** The magistrate's decision was filed on January 5, 2011. The judgment and entry adopting the decision of the magistrate was filed by the trial court on May 18, 2011. On June 2, 2011, Kathleen filed a timely notice of appeal with this Court.

I

**{¶ 3}** Kathleen and Michael were married in Carlyle, Illinois, on October 18, 1966. Although two children were born during the marriage, at the time of the parties' divorce, both of the children were no longer minors. We note that both Kathleen and Michael were represented by private counsel throughout the pendency of their divorce. The parties were divorced by way of a Final Judgment and Decree of Divorce filed on November 12, 1997. In relevant part, the divorce decree provided that Kathleen would be entitled to 50% of the accumulated amount of benefits in Michael's General Motors Retirement account from the date of the marriage, October 18, 1966, through October 17, 1997, by way of a QDRO.[1]

**{¶ 4}** On January 14, 1998, a stipulated QDRO was filed by the parties.

---

[1]Michael began working at General Motors in April of 1968. At the time of the parties' divorce, Michael was still working at General Motors. Michael did not retire until December of 2004, at which point his retirement benefits commenced, and both he and Kathleen began collecting their respective shares of the retirement account.

The QDRO provided Kathleen with her marital share of Michael's retirement benefits using a coverture fraction. The QDRO also stated that Kathleen was entitled to pre-retirement survivorship benefits if Michael were to die before he retired and the benefits commenced. We note that Michael married another woman following his divorce from Kathleen. Upon his retirement from General Motors in 2004, Michael designated his current wife to receive his post-retirement survivor benefit.

{¶ 5} On November 15, 2010, Kathleen filed her motion requesting that a modified QDRO be issued which would specifically provide her with post-retirement survivorship benefits from Michael's retirement fund. Following a hearing on December 21, 2010, the magistrate issued a decision dismissing Kathleen's motion, and ordering that the original QDRO filed by the parties remain in effect. After objections were filed by Kathleen, the magistrate's decision was adopted by the trial court in a decision issued on May 18, 2011. The trial court held that the language in the original QDRO clearly and unambiguously stated that Kathleen was entitled to pre-retirement survivor benefits, but it did not address post-retirement survivor benefits. The trial court also found that the final divorce decree did not contain language granting Kathleen post-retirement survivor benefits. Thus, the trial court agreed with the magistrate and held that Kathleen was not entitled to post-retirement survivor benefits.

{¶ 6} It is from this judgment that Kathleen now appeals.

II

{¶ 7} Kathleen's sole assignment of error is as follows:

{¶ 8} "THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S

MOTION TO MODIFY THE QUALIFIED DOMESTIC RELATIONS ORDER (QDRO) AND AWARD APPELLANT THE SURVIVOR BENEFIT RIGHTS CONCERNING APPELLEE'S RETIREMENT BENEFITS, OR IN THE ALTERNATIVE, MODIFY THE QDRO TO AWARD APPELLANT HER SHARE OF THE APPELLEE'S RETIREMENT BENEFITS IN A SEPARATE INTEREST QDRO SO THAT SHE CAN RECEIVE HER BENEFITS FOR THE REMAINDER OF HER LIFETIME."

{¶ 9} In her only assignment or error, Kathleen contends that the trial court erred when it found that the clear and unambiguous language in the QDRO and final divorce decree did not entitle her to post-retirement survivor benefits from Michael's retirement fund. Specifically, she argues that the language of the QDRO is ambiguous regarding her entitlement to a post-retirement survivor benefit. Further, Kathleen asserts that the intent of the parties when the QDRO and final divorce decree were drafted was to entitle her to post-retirement survivor benefits.

{¶ 10} It is well established that "pension or retirement benefits accumulated during the course of the marriage are marital assets subject to property division in a divorce action." *Erb v. Erb*, 75 Ohio St.3d 18, 20, 661 N.E.2d 175 (1996). Regarding the division of pension or retirement benefits, the "trial court must have the flexibility to make an equitable decision based upon the circumstances of the case, the status of the parties, the nature, terms, and conditions of the pension plan, and the reasonableness of the result." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 180, 559 N.E.2d 1292 (1990). A trial court "should attempt to preserve the pension or retirement benefit asset in order that each party can procure the most benefit," and that a court "should attempt to disentangle the parties' economic partnership so

as to create a conclusion and finality to their marriage." Id.

{¶ 11} The trial court has broad discretion to divide property in domestic relations cases, and its decision will not be disturbed on appeal absent unreasonable, arbitrary, or unconscionable conduct. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998), citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989); *Martin v. Martin*, 18 Ohio St.3d 292, 294-295, 480 N.E.2d 1112 (1985); *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982). "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." *Middendorf*, 82 Ohio St.3d at 401, 696 N.E.2d 575.

{¶ 12} Generally, we have held that where the pension benefits were vested but unmatured at the time of divorce, it may not be possible or equitable to effect a final division of retirement benefits. *Layne v. Layne* (1992), 83 Ohio App.3d 559, 615 N.E.2d 332 (2d Dist. Champaign 1992). In this situation, the Ohio Supreme Court held in *Hoyt* that a trial court could divide retirement benefits by deferred distribution through a Qualified Domestic Relations Order (QDRO). 53 Ohio St.3d 177, 559 N.E.2d 1292. A QDRO is merely an order in aid of execution on the property division **ordered** in the divorce or dissolution decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3109.171(I) prohibits, and the court does not lack jurisdiction to issue it. *Tarbert v. Tarbert*, 2d Dist. Clark No. 96-CA-0036, 1996 WL 555039 (Sept. 27, 1996).

{¶ 13} At the time the decree of divorce was filed in this case, both parties were represented by counsel, and had reached agreement about the terms in the decree. Agreements incorporated into divorce decrees are contracts and

are subject to the rules of construction governing other contracts. *Pavlich v. Pavlich*, 9th Dist. Summit No. 22357, 2005-Ohio-3305. Typically, we review contractual questions *de novo*, except where the contract is ambiguous. *Dzina v. Dzina*, 8th Dist. Cuyahoga No. 83148, 2004-Ohio-4497. The trial court has broad discretion to clarify ambiguities, but whether a contract is ambiguous is a decision that is made as a matter or law. *Pavlich*, 2005-Ohio-3305. If an ambiguity does not exist, the trial court "may not construe, clarify or interpret the parties' agreement to mean anything outside of that which it specifically states." Id. In the instant case, the final divorce decree and the QDRO do not contain inconsistent terms and are not ambiguous.

{¶ **14**} The stipulated QDRO filed by the parties on January 14, 1998, states in pertinent part:

{¶ **15**} If the Participant, "defendant," dies prior to the commencement of benefits, the alternate Payee, "plaintiff," shall be a surviving spouse under IRC Sections 401(a) (11) and 417 *and shall be entitled to pre-retirement survivor annuity* or other survivor annuity provided to the surviving spouse under the plan, but only to the extent of the benefit described above, and only if the Plan so provides. Because husband and wife were married for at least one year, wife shall be treated as meeting the requirements of IRS Section 417(d) for purposes of determining survivor benefits.

{¶ 16} The plain language of the QDRO clearly provides Kathleen with pre-retirement survivor benefits should Michael have died before his retirement benefits

commenced. However, there is no mention of post-retirement survivor benefits for Kathleen in neither the QDRO nor the final divorce decree. The parties' divorce decree specifically states that Kathleen was awarded a one-half (50%) interest in the retirement benefits earned by Michael during the marriage of the parties. The QDRO provides Kathleen with 50% division of the marital portion of Michael's retirement benefits to be determined using a coverture fraction. Neither the divorce decree nor the QDRO provide that Kathleen is entitled to post-retirement survivorship benefits. Since the divorce decree and the QDRO contain no mention of post-retirement survivorship benefits, we must assume that the parties chose not to include them. *Schetter v. Schetter*, 2d Dist. Clark No. 2010 CA 35, 2011-Ohio-246.

{¶ 17} While she acknowledges that neither the divorce decree nor the QDRO contain any mention of post-retirement survivor benefits, Kathleen asserts that it was the intent of the parties to include such terms in the decree and QDRO based on testimony given at the parties' divorce hearing on October 17, 1997. Accordingly, Kathleen directs us to the following exchange between the trial court and counsel:

> {¶ 18} The Court: Folks, I can just tell you, I will never ever approve non-modifiable spousal support unless somebody is so well-heeled with money, and it's some sort of a – *you have survivor benefits on the QDRO*?
>
> {¶ 19} Counsel for Kathleen: *Yes*.

{¶ 20} In light of this exchange, Kathleen asserts that it was the intent of the parties at the time that the QDRO was drafted to include language awarding her

post-retirement survivor benefits. Upon review of the entire transcript of the divorce hearing, however, it is clear that the parties and the trial court were discussing survivor benefits in relation to whether Michael would retire early from General Motors or pass away before his retirement benefits were fully vested, thereby depriving Kathleen of her interest in the benefits. In the context of the entire exchange, the parties were discussing the inclusion of a pre-retirement survivor benefits clause in the QDRO in order to protect Kathleen's interest in Michael's retirement benefits should he retire early or die before retiring. The QDRO stipulated to by both parties clearly reflects their intent to provide Kathleen with pre-retirement survivor benefits, and said language was included in the QDRO. There was no discussion during the divorce hearing, however, regarding the inclusion of post-retirement survivor benefits.

{¶ 21} We note that during oral arguments, Kathleen's appellate counsel heavily relied upon our recent decision in *Plummer v. Plummer*, 2d Dist. Montgomery No. 23743, 2010-Ohio-3450, in support of her argument that the trial court erred by refusing to modify the QDRO to include post-retirement survivor benefits. In *Plummer*, we held that where the QDRO approved by the trial court was inconsistent with the express terms of the final divorce decree between the parties, the QDRO was defective and subject to modification by the court in order to conform with the divorce decree. Id. The divorce decree in *Plummer* explicitly stated that the ex-wife was entitled to "receive 50% of the value of [ex-husband's] interest in his GM Pension fund under the *Survivor Annuity Benefit Pay-Out* as of the date of the filing of this final judgment and decree of divorce ***." We also

found that early retirement benefits are a function of an employee's participation in a retirement plan. Id. Unless specifically excluded by the divorce decree, early retirement benefits are properly divisible as marital property when they were earned during the marriage. *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469, ¶ 27 (2d Dist. Greene).

{¶ 22} Clearly, *Plummer* is distinguishable from the facts in the instant case. Whereas the final divorce decree and QDRO filed in *Plummer* were found to be inconsistent with one another, the divorce decree and QDRO in the instant case are not. Moreover, early retirement benefits were not at issue here as they were in *Plummer*. Unlike the divorce decree in *Plummer*, the decree in this case contained no mention of survivor benefits or Kathleen's entitlement to them. The only issue before the trial court was whether Kathleen was entitled to post-retirement survivor benefits when the parties failed to include language authorizing that benefit in the divorce decree or the QDRO. Simply put, *Plummer* is inapplicable to the facts of this case.

{¶ 23} Upon review, we conclude that the language of the QDRO is clear and unambiguous. The language of the QDRO unequivocally states that Kathleen would be entitled to pre-retirement survivor benefits in the event Michael died or retired early before his retirement benefits were fully vested and matured. Conversely, no provision was included in either the final divorce decree or the QDRO which awarded Kathleen post-retirement survivor benefits. Neither document addresses post-retirement survivor benefits at all. Lastly, the transcript of the divorce hearing fails to support Kathleen's assertion that the parties intended

to include post-retirement survivor benefits in the QDRO.

{¶ 24} Kathleen's sole assignment of error is overruled.

III

{¶ 25} Kathleen's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Keith R. Kearney
Kevin D. Hughes
Hon. Timothy D. Wood