## A01A2056. MUSE v. TREADAWAY et al.

(561 SE2d 481)

POPE, Presiding Judge.

In this case we are presented with the question of whether the guardian of the person of an incapacitated adult may file suit seeking to set aside deeds executed by the ward while he was allegedly incapacitated, or whether the suit should properly be filed by the ward's guardian of property. This issue appears to be one of first impression in this state. We conclude, based upon our review of the applicable law, that the guardian of the property, and not the guardian of the person, has the proper standing to file such a complaint.

G. L. Treadaway, a 93-year-old man, was declared incompetent on September 22, 2000. His daughter, Juanita Muse, was appointed the guardian of his person on December 8, 2000. On December 18, 2000, attorney Rex W. Garner was appointed the guardian of Treadaway's property. Muse filed suit on December 29, 2000, seeking to set aside on the grounds of incapacity, fraud and undue influence three deeds executed by her father on July 7, 2000, prior to the declaration of incompetency. Garner filed his own lawsuit to set aside the deeds on January 16, 2001.

In response to Muse's lawsuit, the defendants, Jerry Lee Treadaway, Gwendolyn Joann Meadows and Gloria Irene Treadaway Hunt, asserted that Muse has no standing to seek to set aside the deeds. Rather, they assert that Garner, as guardian of the property, is the true party in interest. The defendants deny the allegations of wrongdoing asserted in both lawsuits.

Muse filed a motion to strike the defendants' standing defense. In that motion, Muse asserted that she has standing under OCGA § 29-5-3 (b) (6) and that Garner's action is subject to abatement as it was the same as her action. After a hearing, the trial court denied the motion and dismissed Muse's complaint, concluding that the guardian of the person was not the proper party to bring the lawsuit.

1. Under Georgia law, a judge of the probate court may appoint a guardian of the person or a guardian of the property, or both, for an incapacitated adult. OCGA § 29-5-1 (a). The appointment of a guardian of the person is appropriate to the extent that incapacitated adults "lack sufficient understanding or capacity to make significant responsible decisions concerning their persons or to the extent that they are incapable of communicating them." OCGA § 29-5-1 (a) (1). The probate court may appoint a guardian of the property to the extent that the incapacitated adult is incapable of managing his estate and to the extent "that the appointment is necessary either because the property will be wasted or dissipated unless proper management is provided or because the property is needed for the support, care, or well-being of such adult[ ]." OCGA § 29-5-1 (a) (2).

Each guardian's range of responsibilities and duties corresponds to these respective areas of incapacity. OCGA §§ 29-5-3; 29-5-4. Therefore, the guardian of the person is granted custody of the ward and is charged, inter alia, with maintaining the individual rights and dignity of the ward and with making arrangements for the ward's "support, care, well-being and appropriate habilitation, training, and education." OCGA § 29-5-3 (b) (1), (2), (3). The only property for which the guardian of the person has any responsibility is the "clothing, furniture, vehicles, and other personal effects of the ward which are with the ward," and the guardian is charged only with taking "reasonable care" of such items. OCGA § 29-5-3 (b) (5).

The guardian of the property, in contrast, is granted extensive powers over the ward's property subject to approval from the probate court. The guardian may sell, lease, encumber, exchange or otherwise dispose of the ward's real or personal property. OCGA §§ 29-2-3; 29-2-4; 29-2-7; 29-5-4. He or she can make repairs or improvements to the ward's property or can run a farm or business owned by the ward in his stead. OCGA §§ 29-2-11; 29-2-12. The guardian of the property may even make investments in land on behalf of his ward. OCGA § 29-2-14. These powers are, of course, governed by the ward's right "to have his property utilized to provide adequately for his support, care, education, and well-being." OCGA § 29-5-7 (g) (3).

Although nothing in the Georgia Code explicitly authorizes the guardian of the property to file suit to set aside a deed, the Supreme Court of Georgia has recognized that such a guardian "certainly has standing to bring suit to set aside a deed on the ground that the deed was executed by the guardian's ward while the ward was incompetent." *Loftis v. Johnson*, 249 Ga. 794, 795 (294 SE2d 511) (1982) (plaintiff co-guardian of property). Accordingly, it is clear that Garner, as guardian of the property, had standing to bring his complaint.

No such clear authority exists, however, to support Muse's standing to assert her lawsuit. As guardian of the person, Muse is granted no power over and is charged with no responsibility for Treadaway's real property. Rather, her powers are the same as that of a parent over his child. OCGA § 29-2-1.[1] Parents are considered the natural guardians of their children. OCGA § 29-4-2 (a). And a natural guardian has no power to demand or receive the property of his child until the natural guardian becomes the legally qualified

---

[1] "The power of a guardian over the person of his ward shall be the same as that of the parent over his child, the guardian standing in the place of the parent. In like manner it shall be the duty of a guardian to protect and maintain and, according to the circumstances of the ward, to educate him." OCGA § 29-2-1.

guardian of the child's property. OCGA § 29-4-2 (b).[2] Here, Garner, and not Muse, is the legally qualified guardian of Treadaway's property. Because Muse stands in the shoes only of a natural guardian with regard to Treadaway's property, she "may not act as a representative of his . . . property interests." *Lynn v. Wagstaff Motor Co.*, 126 Ga. App. 516, 518 (191 SE2d 324) (1972).

Muse points, however, to OCGA § 29-5-3 (b) (6), which states that a guardian of the person "[m]ay participate in such legal proceedings, in the name of the ward, as are appropriate for the support, care, education, or well-being of the ward." She asserts that this provision gives her standing to assert her claim because Treadaway depends upon rental income from the property for his support. Although this provision may allow Muse to participate in a lawsuit where appropriate to perform her duties to her ward, we find nothing in the language of this provision to confer standing upon her to initiate a lawsuit over property as to which she has no power, rights or obligations. Rather, Garner, as guardian of the property, has the obligation to ensure that Treadaway's property is properly utilized for his "support, care, education, and well-being," OCGA § 29-5-7 (g) (3), and he has the standing to protect Treadaway's interests in this matter.

Accordingly, we find that the trial court properly dismissed Muse's complaint.

2. Muse's remaining enumeration of error is rendered moot by our holding above.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 8, 2002 —

*Jones & Ledbetter, Howard W. Jones*, for appellant.
*Bailey & Govignon, William P. Bailey, George P. Govignon*, for appellees.

---

[2] Although this requirement may not apply where a child's property is worth less than $10,000, OCGA § 29-4-2 (b), it was asserted here that Treadaway's property is valued in excess of $800,000 to $1 million.