[Cite as *Kidd v. Alfano*, 2016-Ohio-7519.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| MARTHA J.W. KIDD INDIVIDUAL, et al. | : | Appellate Case No. 26598 |
| | : | |
| Plaintiffs-Appellants | : | Trial Court Case No. 13-CV-1255 |
| | : | |
| v. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| SUSAN J. W. ALFANO INDIVIDUAL, et al. | : | |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 28th day of October, 2016.

. . . . . . . . . . .

DAVID D. BRANNON, Atty. Reg. No. 0079755, 130 West Second Street, Suite 900, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant Jean Webb;
      and for Plaintiffs-Appellants Martha Kidd, Guardian and Martha Kidd, Ind.

CHRISTOPHER R. CONARD, Atty. Reg. No. 0039751, and DANIEL J. GENTRY, Atty. Reg. No. 0065283, 33 West First Street, Suite 600, Dayton, Ohio 45402
      Attorneys for Defendants-Appellees Susan Alfano, Individual and Co-Trustee;
      Jennifer Alfano-Hill and John Alfano; Karl Webb, and Margaret Emery

. . . . . . . . . . . .

HALL, J.

{¶ 1} Plaintiffs-appellants Martha J.W. Kidd, individually and as guardian of Jean Webb, and Jean Webb, through her guardian, Martha J.W. Kidd, appeal from an order of the Montgomery County Common Pleas Court denying their request to remove the trustees of a marital trust set up for the benefit of Jean Webb, and the trial court order determining that the trust was not prohibited from paying the attorney fees for the trustees and for contingent beneficiaries for several pieces of litigation initiated by Martha Kidd. Many of the claims for relief litigated in the trial court are not directly raised as issues on appeal, including the dismissal of Martha's claims for tortious interference with inheritance rights, conversion, fraud, misrepresentation, civil conspiracy, punitive damages, and the request for a declaratory judgment. Martha only assigns as error 1) that the trial court abused its discretion by failing to remove the co-trustees, and 2) that the trial court erred in interpreting the terms of a Georgia guardianship settlement agreement regarding the payment of attorney fees. Defendants-appellees Susan J.W. Alfano, John Alfano, Jennifer Alfano-Hill, Karl Webb, and Margaret Emery contend that the trial court properly found no serious breach of the trust agreement, and did not err in its interpretation of the terms of the settlement agreement. We conclude that the trial court did not abuse its discretion by finding that the activities of the trustees did not amount to a serious breach of trust and did not require removal of trustees and that the trial court did not err in concluding that a settlement of guardianship litigation in the State of Georgia did not preclude the trust from paying the attorney fees for trustees and contingent beneficiaries to defend, and counter, four pieces of litigation initiated in Georgia and Ohio by Martha Kidd.

{¶ 2} We affirm the judgment of the trial court.

## I. Background, Relationship of the Parties and the Course of
## the Internal Family Disputes with Four Pieces of Litigation.

{¶ 3} The trial court adopted the procedural history and facts as stated in the magistrate's decisions, except as justified in the trial court's decision. The trial court's "justification" of facts relates only to the remedy fashioned in regard to the advancement made to Susan Alfano as will be further detailed.

{¶ 4} Jean Webb is in her 90's and is not able to handle her own affairs. Herb and Jean were married for over 60 years and in 2006 they set up the Herbert G. Webb Living Trust as part of the family estate plan. Herb died on May 21, 2009. The family consisted of Herb's surviving spouse, Jean, and Herb and Jean's children, Susan, Martha, Karl, and Margaret (Maggie). When the trust was set up on September 27, 2006, Herb was trustee but upon his death the initial successor co-trustees were to be daughter Martha with co-trustee/granddaughter Jennifer Alfano-Hill (Susan's daughter). But Herb changed that by removing Martha entirely on April 3, 2009 at about the time he realized his cancer diagnosis was terminal. At the time of the April 2009 change in trustees, in the opinion of Richard Carr, Herb and Jean's attorney, Jean already had lost her mental faculties and was not capable of making changes in her already existing will or powers of attorney. Martha was upset about being removed as trustee.

{¶ 5} Upon Herb's death, his daughter, Susan Alfano, and granddaughter, Jennifer became co-trustees according to the terms of the amendment of the trust. Also after Herb's death, the family decided Jean would move to Georgia to live with Martha and her husband, Bill. Jean's daughter, Maggie, also lived in the same area and would be able to visit.

{¶ 6} Jennifer and Martha, who previously had been named as joint powers of attorney by Jean in 2006 when Herb set up his trust, jointly wrote to USAA Bank about the USAA account in Herb and Jean's joint names. Martha and Jennifer's written request, in their capacity as POAs, was that Martha *and* Jennifer be added to the account and that Herb be removed. However, when new checks were issued for the account, they were only in the name of Martha as POA and Jean. Martha contended that she had trouble dealing with Jean's Medicare, so on December 29, 2009, Martha initiated the first lawsuit, in Georgia, to institute a formal guardianship for Jean. In her petition to be appointed guardian Martha represented there was about $160,000 in the USAA accounts. Jennifer was later denied access to the USAA accounts despite her joint POA status.

{¶ 7} Another account had been opened at Pinnacle Bank in Georgia on September 1, 2009, in Jean and Martha's names, with insurance proceeds of about $6,500. Martha's name on the account does not reflect that Martha was only acting in a representative capacity as power of attorney. Martha claimed Jennifer was aware of this account, but the rest of the family indicated Jean was unable to handle her own affairs since the late 1990s, and that this account was opened secretly.

{¶ 8} On November 25, 2009, a check was written on the USAA account to Martha's husband, ostensibly as a birthday gift from Jean. On December 3, 2009, Martha "reimbursed" herself $2,265.79 from the account. Martha said this was with Jennifer's knowledge, but Jennifer denied knowledge or authorization. On December 29, 2009, the same day Martha filed the guardianship petition, which asserted Jean was incapable of handling her own affairs, a check was written in the amount of $37,000 to Jean, signed by Jean and deposited in the undisclosed Pinnacle account. On January 25, 2010, Martha

wrote a check for $24,010, signed only by herself, from the Pinnacle account as a "down payment" on a home she and Bill were building. Also in January 2010, Martha wrote a check to cash for herself, signed only by herself, for $13,000 from the Pinnacle account claiming it was her "annual gift."

{¶ 9} As some of the Georgia bank account information came to light, Jennifer and Susan decided to file a cross-petition for a guardian and conservator, which they did on January 27, 2010. The next day, Martha used $40,000 that she had transferred from the USAA account to the Pinnacle account to acquire two Pinnacle CD accounts, $20,000.00 each, signed by Martha and Jean, in their joint names with a right of survivorship. These account ownership designations apparently were not changed until after the settlement on the second Georgia litigation, on September 26, 2011, because relinquishment of Martha's survivorship interest was part of the settlement. Had Jean expired in the interim, the CD accounts would have passed by survivorship to Martha. Jean's will, which had been executed in 2006, disposed of all her assets to the Herbert G. Webb Living Trust which, in turn, would have divided her assets equally to the four children. Transfer of the entirety of the CDs by survivorship to Martha likely would have resulted in another round of litigation.[1]

{¶ 10} Martha says that she returned the money she had taken, but the record is not clear whether she was referring only to returning the $13,000 check for cash she wrote

---

[1]Although the Magistrate's decision did not make any findings with regard to ownership of the regular Pinnacle account, the account agreement, part of Exhibit EEE dated 9-1-2009, listed Martha as an "owner," and she also had survivorship rights for the jointly opened account. Martha, therefore, had full access to all the funds in the account and would have owned the account outright had Jean passed away prior to settlement of the guardian/conservator appointment in the fall of 2011.

for herself, or the $2,000 gift to her husband, or the reimbursements to herself, or the $24,010 down payment on her house. The Pinnacle account record (Exhibit F), from where these withdrawals were made, reflects a redeposit of the $13,000 on February 8, 2010. It does not reflect any redeposit of $24,010, from January 5, 2010, when that down payment check reached Pinnacle, the payor bank, until May 24, 2010, when the transactions in the exhibit end. There are also no other deposits, other than interest, during this period.

{¶ 11} With regard to the filing of a cross petition in the Georgia court for appointment of a guardian and conservator of Jean, the rest of "the family agreed that it was in Jean's best interest to oppose Martha's petition" (Magistrate's Decision, March 20, 2014 at 10). Jennifer and Susan, the Ohio co-trustees, decided to use trust funds to pay for the lawyers in both Ohio and Georgia. "All of the family members (except, of course, Martha and legally incapacitated Jean) were aware of the litigation and use of Trust funds." (*Id.*). Richard Carr opined that Jean's general durable power of attorney and healthcare power of attorney made a guardianship unnecessary if Martha and Jennifer had been able to work together.

{¶ 12} On March 30, 2010, a final order of Judge Cross of the Probate Court of Madison County, Georgia appointed Martha as guardian of Jean and Jennifer as conservator of Jean's assets.[2] Martha was ordered to "relinquish all funds of the ward's

---

[2]Parenthetically, we note that both the trial court and the magistrate below determined that Martha not only could bring her claims on her own behalf but, as guardian, Martha could bring the same claims on behalf of her mother, Jean. We believe this was plainly wrong. Prior to a 2005 statute revision, Georgia guardians were designated as guardian of the person if they had authority over the ward's general health and welfare, and designated as guardian of the estate if they had authority over the ward's property and finances. In 2005 the statute changed. It made a "conservator" the guardian of the property, and a "guardian" became the guardian of the person. CGA Annot. § 29-1-1 (2) & (7). Georgia case law has held that a guardian of the property is the proper party to bring litigation on

to the conservator immediately." However, she did not do so. Martha appealed on April 10, 2010, and apparently under Georgia law an appeal of a Probate Court conservator and guardian appointment is a proceeding de novo, effectively beginning new litigation and rendering the final order of the probate court unenforceable pending appeal. The rest of the family expended approximately $33,000 in trust funds for both Ohio and Georgia attorney fees and costs combined for the first round of litigation initiated by Martha.

{¶ 13} The second Georgia litigation (the de novo appeal) proceeded through discovery including documentary exchange, depositions, interlocutory motions, and court orders for bank records. The case eventually was ordered to mediation, and a settlement agreement was reached on September 26, 2011, ending the case. The approximate year and a half of litigation was paid for by the trust on behalf of the family in the amount of roughly $41,300 for Ohio attorneys, $69,000 for Georgia attorneys, and $6,500 in expenses for a total of almost $117,000, all with the approval of the rest of the family.

{¶ 14} For the Ohio litigation that resulted in this appeal, as of completion of the trial, the rest of the family had incurred attorney fees of $101,434.27 and costs of $1,521.40 for a total of $102,955.67. Although Martha Kidd spent considerably less than the rest of the family for her first two Georgia cases, it was perhaps in part because she did not engage lawyers in two states, was not defending in a distant jurisdiction, and, as

---

behalf of the ward concerning property. The guardian of the person does not have such authority and, therefore, lacks standing. *Muse v. Treadaway*, 254 Ga.App. 166, 561 S.E.2d 481 (2002). Ohio law is the same. *See Maylin v. Cleveland Psychiatric Institute*, 52 Ohio App.3d 106, 108-109, 557 N.E.2d 170 (10th Dist.1988) (observing that the power to initiate a lawsuit that seeks a monetary award resides in the guardian of the estate, not the guardian of the person). Therefore, Martha has no authority to bring a monetary claim on behalf of Jean. Nevertheless, Martha's individual tort claims are virtually identical to Jean's (except perhaps that if Martha were to prevail against the trust her interest would be only a contingent one-fourth thereof) and we must adjudicate the same issues therein.

opposed to the rest of the family, did not have to uncover her own secret transactions. Contrarily, Martha's attorney fees for the Ohio litigation were $50,681.87, or about half of the fees for the rest of the family.

{¶ 15} In 2013, while this case was pending in the trial court, Martha initiated a fourth lawsuit, the third Georgia litigation, seeking to deny visitation with Jean by other family members. The parties named in this complaint are Martha and Jean, as plaintiffs, and Jennifer and Maggie, as defendants. Jennifer is named in her representative capacity as the conservator for Jean, and Maggie is named in her individual capacity. In response to the third Georgia lawsuit, the defendants seek to hold Martha in contempt of court for denial of visitation rights, and to remove Martha as guardian. Martha had obtained an *ex parte* temporary restraining order regarding visitation in that case but after a two-day hearing, the restraining order was not extended. The current status, or the final resolution, of the third Georgia action is not apparent from the record in this appeal. On that case Martha spent $22,938.36 for attorney fees and the rest of the family spent $25,017.29 as of the stipulation filed March 12, 2014.

{¶ 16} At the time of the Ohio trial, the Georgia conservatorship had about $400,000 in the conservator account and income outpaces expenses. The remaining portion of the Webb trust had a value of approximately $146,000.

{¶ 17} The second Georgia litigation was mediated pursuant to that court's alternative dispute resolution program and on September 26, 2011 a settlement agreement was signed by Martha, Jennifer, and Maggie[3], retaining Martha as guardian

---

[3] Maggie was substituted for Susan as applicant to be guardian of the person of Jean because Maggie is a resident of Georgia.

and Jennifer as conservator. The settlement agreement provides that it resolves all monetary issues between the conservatorship estate and Martha, Martha must withdraw as potential executor of Jean's will and as potential successor trustee, visitation was arranged and it contained many other provisions. One of the terms is that "Each party will pay his/her own costs and fees." The settlement agreement also established a duty of the conservator to pay the sum of $2,500 a month to Martha as compensation for her care of Jean. As a result of the settlement agreement, all of the accounts that Martha controlled under the POA for Jean were transferred into a conservatorship account, which then became controlled by Jennifer. A finding was made that at the time of trial, the conservatorship account had a balance of more than $400,000, but no findings were made regarding its income or expenses, even though the record supports a finding that Jean receives income from pension benefits and has medical expenses. The only exhibit in the record, regarding income for the Georgia conservatorship, Plaintiff's Ex. 6, does not include income received or expenses paid out of the conservatorship account, other than legal fees paid to a Georgia lawyer relating to the first litigation. The Madison County Superior Court of Georgia retains jurisdiction over the guardianship and the conservatorship.

{¶ 18} In the underlying Ohio litigation here, the Magistrate determined, and the trial court adopted, the following facts:

In 2012, Susan became gravely ill. She was hospitalized seven times and spent many days in the intensive care unit, at times in a coma. Her husband even began considering funeral arrangements. On one occasion, while Susan was in a coma, Susan's husband approached his daughter

Jennifer and requested an advancement of $14,000.00 on Susan's behalf for medical expenses incurred. Initially, Jennifer refused the request. However, when her father asked a second time, and after consulting with Maggie, Jennifer agreed. On November 11, 2012, Susan signed a document requesting the $14,000.00 advance, stating, "I understand that it is an advance and it will be deducted from my share of the final distribution when it is made." The request was signed by John (for Susan) and Maggie. Jennifer made the $14,000.00 advancement. She did not consult the next co-trustee named in the Trust, Karl. However, Karl is now aware of the advance and has raised no objection thereto. Thus, it may be inferred that, to whatever extent Karl's approval was needed, Karl has ratified the advance. Martha was not consulted regarding the advancement. (Footnote omitted).

Richard Carr [scrivener of the trust] opined that the Trust document allows for the making of advancements, so long as there reasonably appears to be enough funds available to achieve the Trust's primary purpose of caring for Jean.

(Magistrate's Decision at 14).

{¶ 19} At the time of Herb's death, the trust was divided into two trusts – a marital trust for the benefit of his wife, Jean, during her lifetime with the remainder distributed to the four children upon her death, and a family trust for distribution to the children. Susan and her daughter Jennifer are the first successor co-trustees for the trust. Each trust started with a balance of $285,029.50. Later, the proceeds of the sale of Herb and Jean's

house, $90,000, were distributed to the trusts. Stocks were also transferred into both trusts, valued at $246,538.46. The assets of the family trust have been distributed to the four children. The four children will be the beneficiaries of the balance left in the marital trust and of the remainder of Jean's assets upon her death.

{¶ 20} Article XI (A)(9) of the trust gives the successor co-trustees, currently Susan and Jennifer, the authority "to pay all expenses incurred in the administration of the trust, including reasonable compensation to any successor co-trustees for actual services rendered, and to employ or appoint and pay reasonable compensation to accountants, depositaries, investment counsel, attorneys, attorneys-in-fact, and agents." Article XI (A)(10) gives the co-trustees authority "to deal with the fiduciary or fiduciaries of any other trust or estate, even though a successor co-trustee(s) is also a fiduciary of the other trust or estate." Article XI(A)(18), authorizes the co-trustees "to distribute, without filing a judicial accounting or obtaining judicial approval, the whole or part of the trust estate upon the receipt and release of the beneficiary(ies) entitled to receive such distribution or based upon an agreement with such person." Pursuant to Article XII(A), if a beneficiary becomes disabled, the co-trustees have the authority to make distributions to the disabled beneficiary directly or to her appointed guardian. Pursuant to Article XII(D)(ii), the successor co-trustees have no power to use the trust property "for the purpose of directly or indirectly discharging the personal legal obligations of the successor co-trustees." Article VII(B) requires the co-trustees "to render a current annual account to each income and vested principal beneficiary who so requests in writing each year."

{¶ 21} The trustees did not create or provide any formal annual accounting of the trust assets, expenses, and distributions, from its inception in 2009 until 2013. Martha and

Jean did not know that the co-trustees of the marital trust were expending trust assets for legal fees incurred in the conservatorship lawsuits. During the lawsuit in Ohio, as discussed below, it was discovered that the legal fees to defend all of the Georgia lawsuits regarding the conservatorship were being paid out of the assets of the Ohio marital trust, as well as the legal fees incurred to defend the Ohio lawsuit.

## II. The Course of the Proceedings in Ohio

{¶ 22} The case before us was initiated in the general division of common pleas court,[4] seeking an accounting of the marital trust established for the sole benefit of Jean Webb, and for damages based on tort claims for breach of fiduciary duty, tortious interference with inheritance rights, conversion, fraud, misrepresentation, intentional infliction of emotional distress, and civil conspiracy. The action also sought punitive damages, a declaratory judgment to outline the rights of the parties under the trust, and any other relief under law or equity. Only two of the five defendants are co-trustees of the trust, who were named as parties in both their individual capacity and in their representative capacity as trustees. The other three defendants are family members, named as parties in their individual capacity.

{¶ 23} Shortly after the answer was filed, the matter was referred to the court's magistrate for trial and a magistrate's decision including findings of fact and conclusions of law on all issues of fact and law, as prescribed by Civ. R. 53. Both parties' motions for summary judgment were granted in part and denied in part. Pursuant to a motion for

---

[4]Pursuant to R.C. 5802.03, the probate and general divisions of common pleas court have concurrent jurisdiction to hear and determine any action that involves an inter vivos trust.

reconsideration, the magistrate's decision on the summary judgment motion was later amended. In the summary judgment decisions, it was concluded, as a matter of law, that Jean and Martha have standing to bring the action, and that Martha, as guardian, is entitled to an accounting. It was concluded that issues of fact remained, which must be resolved at trial, on whether the co-trustees breached their fiduciary duties, whether an accounting had already been provided, whether the co-trustees interfered with Martha's expectancy of an inheritance or converted funds because of the payment of legal fees and the advancement out of trust funds, whether Jennifer engaged in fraud when she represented in the settlement agreement that she would pay her own legal fees, whether they engaged in a civil conspiracy by dividing up and giving away personal property belonging to the trusts, and whether any of the actions were done with malice. The only claim resolved through the summary judgment process was dismissal of the claim for intentional infliction of emotional distress.

{¶ 24} After the trial before the magistrate, the magistrate issued a decision ruling in favor of the defendants/appellees on all claims other than the breach of fiduciary duty claim with regard to the $14,000.00 advancement to Susan, which the magistrate concluded was a breach of fiduciary duty. The magistrate ruled that the trustees had a statutory duty, pursuant to R.C. 5808.13, to provide an annual "report of the trust property, liabilities, receipts and disbursements." The magistrate also concluded that the trustees had a duty under the language of the trust instrument which required "an annual account to be provided to each income and vested principal beneficiary, who so requests each year." Although the record shows that Martha requested an accounting of the family trust by letter dated November 5, 2010, the magistrate found that an accounting was

unnecessary because "Martha was aware of the limited assets in the trust, had received a breakdown of the stock share division and disbursement, and knew the expenses related to the house were being charged to the marital sub-trust." Dkt. # 76.

{¶ 25} The magistrate also concluded that the trustees did not breach their fiduciary duties under tort law by authorizing the expenditure of trust funds to pay the legal fees incurred for defending all four legal actions. The magistrate determined that the language of the parties' settlement agreement stating that "[e]ach party will pay his/her own costs and fees," was ambiguous regarding payment of attorney fees from the trust because it is not clear what was meant by the term "parties," and the agreement does not mention parties by name or whether they were parties in their individual capacities or in their representative capacities. Therefore, the magistrate allowed the witnesses to explain what they thought was meant by the term, and the magistrate adopted the definition suggested by Maggie, who also signed the settlement agreement. Maggie testified that the language was meant to clarify that neither side in the dispute would be obligated to pay the opposing party's legal fees.

{¶ 26} After objections were filed by both sides, the trial court adopted the findings of fact made by the court magistrate. It was concluded that payment of the legal fees from the marital trust was reasonable and proper and was necessary to serve Jean's best interest.

{¶ 27} The trial court agreed with the magistrate's conclusions of law on all issues except for the magistrate's resolution about the $14,000.00 advancement. The magistrate had concluded that Jean's children could individually consent to forgiveness of repayment of the money of the breach of fiduciary duty. The trial court ruled Susan must repay to the

trust the entirety of the advancement plus interest. The trial court further agreed with the magistrate that the single act of a breach of fiduciary duty did not warrant removal of the co-trustees.

### III. Standard of Review

{¶ 28} "The decision whether to remove a trustee lies within the sound discretion of the probate court, and an appellate court will not reverse that decision absent a showing of a clear abuse of that discretion." *Ulinski v. Byers*, 9th Dist. Summit No. 27267, 2015-Ohio-282, ¶ 14, citing *In re Trust Estate of CNZ Trust*, 9th Dist. Lorain No. 06CA008940, 2007-Ohio-2265, ¶ 16. However, when the issue concerns the application of law, it can present a mixed question of law and fact, which calls for two different standards of review. *Arnott v. Arnott,* 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 11. *See also Schulze v. Grandstaff*, 11th Dist. Lake No. 2012-L-040, 2012-Ohio-5934, ¶ 13. As summarized in *State v. Carr*, 173 Ohio App.3d 436, 2007-Ohio-5466, 878 N.E.2d 1077, ¶ 12 (5th Dist.):

> We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. However, with respect to the trial court's conclusions of law, we must apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. An appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. (Internal citations omitted.)

{¶ 29} The trial court's decision not to remove the co-trustees was made after consideration of R.C. 5807.06(B)(1), which permits a court to remove a trustee for a "serious" breach of the trust. The trial court indicated that the $14,000.00 advancement of inheritance to Susan was "the only breach of fiduciary duty by either of the co-trustees." (Dkt. 88, at 46). We defer to the trial court's findings of fact, but we review the court's legal conclusions de novo. *Boyd v. Moore*, 184 Ohio App.3d 16, 2009-Ohio-5039, 919 N.E.2d 283, ¶ 9 (2d Dist.).

{¶ 30} The second issue before us calls for an interpretation of the settlement agreement executed by the parties to the Georgia litigation. We review interpretation of a contract de novo, unless the contract is ambiguous. *Juhas v. Juhas* 2d Dist. Montgomery No. 26186, 2014-Ohio-5364, ¶ 18. Whether a contract is ambiguous is a question of law, but once we agree that there is an ambiguity, the trial court's clarification is reviewed for abuse of discretion. *Id.*

## IV. The Trial Court Did Not Abuse Its Discretion in Determining that the Trustees' Actions Were Not a Serious Breach of Trust

{¶ 31} Kidd's First Assignment of Error alleges as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO REMOVE THE CO-TRUSTEES BECAUSE THE CO-TRUSTEES MAINTAINED CONFLICTS OF INTEREST, COMMITTED A BREACH OF THEIR FIDUCIARY DUTIES, AND FAILED TO PROVIDE TIMELY ACCOUNTINGS, CAUSING WASTE AND SIGNIFICANT DAMAGE TO JEAN AND HER TRUST.

{¶ 32} We begin our analysis of trustee removal by noting that we doubt Martha requested removal of the trustees in a timely fashion. The nature of plaintiffs' causes of action is instructive. Except the first claim for an accounting from the trust, and the request for declaratory relief interpreting the trust, each of the remaining claims is a tort claim for damages. None discuss statutory reasons to remove the trustees. The word "remove" appears nowhere therein. The ad damnum clause of the complaint does not request removal of the trustees. The motion for partial summary judgment, asserting that the co-trustees breached their fiduciary duties, at one point discusses the fact that "there is too much animosity for Jennifer to perform her function as co-trustee." (Motion for Summary Judgment at 16). But there is no request for removal of the trustees. In the plaintiffs' response to the defendants' motion for summary judgment, there is no request for removal of the trustees. The joint pretrial statement does not indicate that removal of the trustees is an issue to be addressed at trial. Throughout the 531 pages of trial transcript, the only mention of removal of the trustees was a remark by the magistrate, at page 178, when commenting on the scope of the evidence. The magistrate stated: "I mean if it's—I can tell you from what I've heard so far, if it's to have her removed as the trustee, my decision would not be to do that—from what I've heard so far." But no request was made at trial to remove the trustees.  It was not until the April 3, 2014 objections and the May 22, 2014 supplemental objections, after the magistrate's decision, that the plaintiffs first requested removal of the trustees. Therefore, we could overrule the first assignment of error solely for the reason that in our view the request for removal of the trustees was not timely before the trial court and is therefore not properly before us. Nevertheless, because the trial court

could order the removal of a trustee sua sponte, we examine the correctness of the trial court's decision not to remove the trustees.

{¶ 33} R.C. 5807.06, provides as follows:

(A) The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or the court may remove a trustee on its own initiative.

(B) The court may remove a trustee for any of the following reasons:

(1) The trustee has committed a serious breach of trust;

(2) Lack of cooperation among cotrustees substantially impairs the administration of the trust;

(3) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries.

(C) Pending a final decision on a request to remove a trustee, or in lieu of or in addition to removing a trustee, the court may order any appropriate relief under division (B) of section 5810.01 of the Revised Code that is necessary to protect the trust property or the interests of the beneficiaries.

{¶ 34} Martha argues that the trial court erred by finding that the co-trustees' breach of duty was not "serious." The term "serious" is not defined in R.C. 5807.06. Neither party cites any case defining this term as used in R.C. 5807.06(B)(1) and there is scant case law discussing the term. In an Eighth District case, the trustee was removed based on the following:

[T]he record in this case reflects numerous instances of Rapoport's abuse of his fiduciary duties that support the trial court's finding that he committed a serious breach of trust. The evidence demonstrated that he approved expenditures of over $115,000 on a property that eventually sold for a loss; hired companies with which he had either a personal or attorney-client relationship to work on the property and later advised those companies not to respond to subpoenas issued by counsel for Jennine; never provided an accounting of Trust expenditures to any of the beneficiaries and pursuant to a request for an accounting, provided only a "guesstimate" of his Trust administration; presented a proposal regarding the Euclid property to Jennine without knowing the value of the property and conditioned upon her executing a release of his liability regarding his administration of the Trust; and threatened Jennine with eviction and a mental examination if she did not accept his proposal.

*Tomazic v. Rapoport*, 2012-Ohio-4402, 977 N.E.2d 1068, ¶ 34 (8th Dist.). We note however that the court of appeals conclusion that a "serious breach of trust" was proven was supported by "numerous breaches of fiduciary duties." We also observe that the court commented "[t]he removal of a trustee is generally considered a drastic action and the party seeking to remove a trustee must show a basis for removal by clear and convincing evidence." *Id.*, ¶ 33, citing *Diemert v. Diemert*, 8th Dist. Cuyahoga No. 82597, 2003-Ohio-6496, ¶ 15–16.

{¶ 35} In the probate case of *Schwartz v. Tedrick,* 8th Dist. Cuyahoga No. 102082, 2016-Ohio-1218, a trustee was removed under R.C. 2109.24, the probate specific statute

authorizing removal of a fiduciary, without reference to R.C. 5807.06. The court of appeals stated however, that Tedrick's use of undue influence to amend her ill husband's trust by removing $400,000.00 of gifts to her husband's children, and her removal of co-trustees constituted a "serious breach of trust" sufficient to warrant removal. Her actions were "an egregious breach of trust that demonstrates she is untrustworthy." *Id.,* ¶ 51.

{¶ 36} The parties have likewise failed to refer us to any case law from other states on the issue and although we have reviewed some cases discussing it, they have not been helpful to our analysis.

{¶ 37} R.C. 5807.06 is Ohio's version of Uniform Trust Code § 706. Although the entire uniform section was not adopted, the Ohio "serious breach of trust" reason for removal of a trustee is the same as the uniform code. The official comment to the 2006 version of the Uniform Code states:

> [N]ot every breach of trust justifies removal of the trustee. The breach must be "serious." A serious breach of trust may consist of a single act that causes significant harm or involves flagrant misconduct. A serious breach of trust may also consist of a series of smaller breaches, none of which individually justify removal when considered alone, but which do so when considered together. A particularly appropriate circumstance justifying removal of the trustee is a serious breach of the trustee's duty to keep the beneficiaries reasonably informed of the administration of the trust or to comply with a beneficiary's request for information as required by Section 813. Failure to comply with this duty may make it impossible for the beneficiaries to protect their interests. It may also mask more serious

violations by the trustee.

{¶ 38} The trial court concluded that the trustees breached their fiduciary duty by making the advancement to Susan for her personal benefit. The trial court corrected the magistrate's conclusions regarding the appropriate remedy for this breach, and ordered Susan to pay back the $14,000 plus interest as relief authorized by R.C. 5810.01(B)(10). The trial court concluded that based on this single breach of duty, removal of the trustees was not warranted. In the probate code, under R.C. 2109.24, removal of a trustee is discretionary when "the interest of the trust demands it," a fact recognized by this district and others: "The court's order removing a trustee is made in its sound discretion, and absent a clear abuse of that discretion will not be reversed by a reviewing court." *National City Bank, Dayton v. Peery,* 2d Dist. Montgomery No. 15117, 1995 WL 737476 (Nov. 8, 1995), at *3; *see also In re Estate of Jarvis*, 67 Ohio App.2d 94, 96-97, 425 N.E.2d 939 (8th Dist.1980). Abuse of discretion review is particularly appropriate where, as here, determining whether a breach is "serious" depends on the conclusion of the trial court after weighing the conduct in the context of the family dynamics involved. Moreover, appellants' brief acknowledges that our standard of review is for an abuse of discretion. Appellants' Brief at 11. Accordingly, the trial court's decision not to remove the trustees will be reviewed for an abuse of discretion.

{¶ 39} Appellants' arguments addressing the failure to remove the trustees are three: 1) the trial court did not appreciate the magnitude of the $14,000.00 advancement and the trust paid attorney fees "through years of litigation" defending the advancement; 2) the co-trustees Jennifer and Susan maintained conflicts of interest which should have resulted in their immediate removal; and 3) the co-trustees wasted trust assets by paying

attorney fees fighting over disclosure of trust accountings.

{¶ 40} Taking these assertions in reverse order, with regard to payment of attorney fees, we discuss the trial court's approval of those fees in our analysis overruling the second assignment of error. Moreover, there was never any evidence presented concerning how much of the attorney fees, if any, were "wasted" fighting disclosure as opposed to fees spent by the family to discover and prove Martha's misuse and sequestration of Jean's funds and challenging Martha's attempt to be conservator. It was appellants' contention in the trial court, and here, that no attorney fees could be paid from the trust at all because of the settlement agreement. Therefore, our analysis of the first assignment of error is grounded in the first two arguments in the preceding paragraph.

{¶ 41} Appellants' second argument is that Jennifer should have been removed because she "maintained" conflicts of interest. We reiterate that removal of the trustees was not raised before the trial. Nonetheless, we observe that potential conflict of interest is inherent in every family trust with a trustee who is a family member. But a family member is typically who the settlor chooses because the settlor recognizes who is reliable, honest, and who has an understanding of the family and the settlor's intentions. Jennifer's decision to make an advancement to her mother was not improper because it was inherently wrong or unjustified; it was found to be improper only because R.C. 5808.02(C) said so. That statute provides that "[a] sale, encumbrance, or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee" and "(2) [t]he trustee's * * * parent * * *." Moreover, a "transaction involving the investment or management of trust property * * * that is otherwise affected by a conflict between the trustee's fiduciary and personal

interests is voidable by a beneficiary" under R.C. 5808.02(B).[5] Therefore, the transaction is voidable because it is deemed or presumed to have been affected by a conflict of interest, not because the trustee "maintained" a conflict. In any event, the trial court determined that the circumstances of the advancement, which is statutorily a presumptive conflict of interest, were insufficient to be a "serious" breach requiring removal. Accordingly Appellants' second argument under this assignment of error fails if we determine the trial court did not abuse its discretion in regard to determining the advancement was not a serious breach.

{¶ 42} The second part of Appellants' first argument, that the co-trustees paid attorney fees from the trust "through years of litigation" to defend the $14,000.00 advancement is not supported by the facts and not detailed by any evidence. The first and second pieces of litigation initiated by Martha resulted in $150,000.00 being spent on attorneys by the trust. The second case was settled September 26, 2011. More than a year later, on November 11, 2012, the advancement was made. Consequently, none of the first $150,000.00 could have been spent to defend the advancement because the advancement had yet to be made. This Ohio litigation was commenced on February 26, 2013. Trial was held February 12-13, 2014. Again it did not extend "through years of litigation." Notably, the claims in the trial court were principally tort claims seeking monetary damages from the trustees, individually and as trustees, and they were entitled

---

[5]One reasonably might argue whether an advancement of inheritance, if authorized by the trust, is a transaction involving investment or management of the trust. The statute seems directed at prohibiting self-dealing in the operation of the trust at the expense of the beneficiaries, not at an authorized advancement of inheritance. Nevertheless, because both the magistrate and trial court applied the statute to the circumstances here, and concluded it was insufficient to remove the trustee, further discussion is unnecessary.

to defend those claims. There was never any evidence presented concerning how much of the attorney fees, if any, were "wasted" fighting disclosure of the advancement as opposed to fees spent by the trustees or the family defending the tort claims for money damages, which appears to be the thrust of the Ohio litigation. The trial court did not, and could not, parse what portion of fees were for what defenses, and neither can we.

{¶ 43} That leaves the first assignment of error to hinge on Appellants' argument that the trial court failed to appreciate the magnitude of the breach of fiduciary duty. After review of all the evidence and all the arguments, the trial court concluded in its detailed 50-page written opinion that there was a single breach of fiduciary duty, the advancement of inheritance to Susan. Although Appellants argue about other alleged indiscretions, the trial court did not find, the record does not support, and appellants do not assign as error the failure to find any other breach. It was therefore the single breach which the trial court concluded was not a "serious" breach of the trust and that the trustees should not be removed because of it. The record supports this conclusion. Jennifer discussed the advancement issue with Maggie and reluctantly decided to make an "advancement" of inheritance. The magistrate, and the trial court, noted that Richard Carr, who prepared the trust, opined that the trust permitted advancements as long as there were sufficient funds to achieve its objective of caring for Jean. Jennifer testified that she believed the trust permitted her to make the advancement. The magistrate and trial court found the advancement to be a breach of fiduciary duty because of the statutory presumption in R.C. 5808.02, not because of evil intent or purposeful wrongdoing. Additionally Jennifer had a document reflecting the nature of the distribution. There was more than adequate money in the trust such that it is likely the three other contingent beneficiaries, including Martha,

eventually would receive at least the amount equal to the advancement to Susan. There was more than $400,000 in the Georgia conservatorship if funds were necessary to provide for Jean's needs. The family previously had made adjustments to strict terms of the trust when the changes were in the best interest of the family, specifically with respect to which part of the trust paid for Jean's residence before it was sold. As noted by the magistrate, Martha never testified that she would not or did not approve of the advancement in light of the dire circumstance of her sister. And, the other siblings assented to the advancement. [6]

{¶ 44} After careful consideration we cannot say that the decision not to remove the trustees was an abuse of discretion. The facts and circumstances here do not compare with the serious actions of the trustee in *Tomazic v. Rapoport* where Rapoport committed numerous breaches of fiduciary duty, tried to have a beneficiary release him from liability and threatened to evict her if she did not. The actions here do not compare to those of Tedrick in *Schwartz v. Tedrick* where she had $400,000.00 of gifts to her husband's children removed from the trust and she removed the previous co-trustees, all for her own benefit. We conclude that even if Appellants' request for removal of the trustees had been timely requested, argued, and tried, we would affirm the trial court's decision. The trial court did not abuse its discretion by failing to order the trustees removal.

---

[6]It is more than curious that if Susan and Jennifer were removed, the next successor co-trustees would be Susan's husband, John C. Alfano, and Karl Webb. Both had been aligned with the rest of the family and approved of, or ratified, the advancement. If this prospective succession of co-trustees is a matter for the court to consider in the "seriousness" analysis, it militates against a shuffling of trustees. No evidence was presented about the ability or desire of these successor co-trustees to administer the trust, perhaps because removal of the current co-trustees was not requested until after the trial.

{¶ 45} The first assignment of error is overruled.

**V. It Was Reasonable for the Trial Court to Conclude that Payment of Attorney Fees from the Trust for the Rest of the Family Was Not a Breach of Fiduciary Duty.**

{¶ 46} In its ruling, the trial court reasoned:

The Court is in agreement with the *Magistrate's Decision* that the payment of Defendants' attorneys' fees from the trust was proper. As detailed by the Magistrate, Martha initiated four separate pieces of litigation pertaining to Jean, all of which were directly related "to Jean's support (i.e. her financial well-being, protection of her asserts and/or the Trust assets), and/or health (i.e. her physical and mental well-being)." *See Magistrate's Decision*. The co-trustees were authorized by the Trust document and the Ohio Trust Code to employ and pay attorney fees directly from the Trust. *See* R.C. 5808.16(X) and (AA). A review of the testimony provided in this case indicates that Jennifer, Susan, Margaret, and Karl all felt that defending these actions was necessary to support Jean's interests, but that the beneficiaries had little means to fight Martha independent of expending the Trust property. The co-trustees were authorized by the Trust document to use trust funds to pay for attorney fees, and this action was reasonable given that the co-trustees believed that defending these lawsuits was necessary to support Jean and her estate. *Id.* * * * Therefore, Jennifer and Susan did not breach their fiduciary duties in using Marital Sub-Trust funds to pay for the Defendants' litigation expenses, as these expenses were necessary in

order to serve Jean's best interests.

(Final and Appealable Decision, Order, and Entry, etc., February 19, 2015 at 41).

{¶ 47} The foregoing determination is not unreasonable. Martha had transferred approximately $100,000 of her mother's money into her and her mother's joint names, with survivorship rights. She had made a $24,010 down payment on her new house. She had made a $13,000 gift to herself, and she had applied to be conservator in charge of Jean's funds. It cannot seriously or reasonably be argued that intervention by the trustee at that point was unnecessary for Jean's protection. Such intervention was successful when the probate judge ordered the appointment of Martha as guardian and Jennifer as conservator. But Martha was not satisfied with that result and instituted a de novo appeal. The risks to Jean's money were ever-present. The fact that the litigation in a foreign jurisdiction became more costly than perhaps anticipated does little to negate the necessity of engagement of attorneys to protect the financial interests of Jean, who was legally incapacitated and had been unable to handle her own financial affairs for years. In addition, the trustees were named as defendants in this tort case, and the trust had statutory authority (R.C. 5808.16(X)) and trust authority to expend attorney fees to defend themselves. With regard to the rest of the family members, all of whom were supportive of the trustees' side of the litigation, their representation was incidental and ancillary and there was no proof that their inclusion was significant or unnecessary. Finally, expenditure of attorney fees to defend and pursue claims in Martha's third Georgia case, which she brought to prevent the family from visiting with their mother, was, in the view of the trial court, "necessary to serve Jean's best interests." (Final and Appealable Decision at 41). With family visitation at risk, we cannot say that determination is an abuse of discretion.

**VI. Payment of Attorney Fees for the Rest of the Family from the Ohio Trust Was Not Prohibited by the Georgia Settlement Agreement.**

{¶ 48} Kidd's Second Assignment of Error is:

THE TRIAL COURT ERRED IN AFFIRMING THE MAGISTRATE'S INTERPRETATION OF THE GEORGIA MEDIATED SETTLEMENT AGREEMENT BECAUSE THE AGREEMENT IS NOT AMBIGUOUS AND BECAUSE THE TRUSTEES WERE ALWAYS A "PARTY" TO THE GEORGIA LITIGATIONS AND EXPRESSLY AGREED TO PAY THEIR OWN ATTORNEY FEES AND COSTS.

{¶ 49} We have previously indicated that the Ohio trust paid attorney fees for the rest of the family for four pieces of litigation. The September 26, 2011 mediated settlement agreement resolved the case of the initial appointment of guardian and conservator, the de novo appeal of those appointments, and miscellaneous expenses Martha claimed she was due resulting from Jean's care. The settlement did not address the Ohio litigation that began in February 2013 or the 2013 denial of visitation litigation in Georgia. Obviously if the settlement agreement had resolved the two 2013 cases then those causes could not have been pursued. The trust paid attorney fees for all four litigations, and, because the settlement only dealt with the first two, we conclude as a matter of law that Appellants' second assignment of error challenges only whether the settlement agreement precluded payment of the rest of the family's attorney fees for the first two cases.

{¶ 50} Martha contends that the trial court erred by concluding that the express language of the settlement agreement was ambiguous. The Settlement Agreement states, in part, that "EACH PARTY WILL PAY HIS/HER OWN COSTS AND FEES[.]" The trial

court concluded that the language of the settlement agreement was susceptible to more than one interpretation, and accepted the interpretation offered by one of the witnesses that neither side of the dispute was responsible for fees incurred by the opposing side. A contract provision is ambiguous if it is "susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 120 Ohio St. 3d 47, 2008-Ohio-4838, 896 N.E. 2d 666, ¶ 17. We agree that the language of the settlement agreement was not sufficiently specific to determine whether the legal fees incurred by either party could be paid from the assets of the trust. The agreement was signed by Martha, who had applied to be guardian and conservator; Jennifer, who had applied to be conservator; and Maggie, who had applied to be Guardian as a substitute for Susan because Maggie was a Georgia resident. Jennifer's signature is not in her capacity as co-trustee of the Ohio trust. Susan, the other co-trustee, did not sign. And the Ohio trust was not a party named in the Georgia litigation. Under those circumstances one could reasonably conclude that the plain language of the agreement does not limit the trust from paying attorney fees for any members of the rest of the family.

{¶ 51} In our view, the extent to which the settlement agreement is ambiguous is created only by Martha's contention that the agreement prohibited the trust from paying attorney fees when the trust was not a named party to the Georgia litigation or the agreement itself. Throughout the trial proceedings below, Martha asserted that she did not receive trust accountings and therefore she did not know, as of the September 26, 2011 agreement, that the trust was paying the attorney fees for the Georgia litigations. If that is the case, then we fail to see how she intended for the settlement agreement to preclude the trust from having paid those fees. In this regard, we agree with the trial court, and the

magistrate, that in light of Martha's contention, the settlement agreement is ambiguous and extrinsic evidence was proper to construe its meaning. We further conclude that it was not an abuse of discretion for the trial court to agree that the most reasonable explanation of the intent of the agreement was as testified to by Maggie: "What I understood it to mean was that neither side would pay the other side's attorney fees. That was my memory of the understanding. It's like – like we – we wouldn't have to pay theirs, they wouldn't have to pay all ours." (Trial Transcript at 269.) The trial court did not err by determining that the Georgia settlement agreement did not preclude the trust from paying the attorney fees for the rest of the family.

{¶ 52} Given our opinion that the trial court correctly found the trust was entitled to spend the funds for the attorney fees, that such payments were not a breach of fiduciary duty and that the Georgia settlement did not prohibit the Ohio trust from paying legal fees for the rest of the family, there is no further question for us to resolve with regard to the amount of attorney fees. The second assignment of error challenges only whether the trust payment of fees is prohibited by the Georgia settlement. "We are required to 'determine the appeal on its merits on the assignments of error set forth in the briefs under App. R. 16, the record on appeal under App. R. 9, and, unless waived, the oral argument under App.R. 21.' App. R. 12(A)(1)(b). We 'sustain or overrule only assignments of error and not mere arguments.' " *Dunina v. Stemple,* 2d Dist. Miami No. 2007 CA 9, 2007-Ohio-4719, ¶ 4, quoting *State v. Federal Insurance Co.*, 10th Dist. Franklin No. 04AP-1350, 2005-Ohio-6807. Because we have concluded that the settlement agreement does not preclude the trust from paying attorney fees, the second assignment of error will be overruled. We recognize that the attorney fees are a lot of money but the assignment of error does not

allow us to delve into accounting for the amounts thereof. This trust is an inter vivos trust. "An inter vivos trust is not subject to continuing judicial supervision unless ordered by the court." R.C. 5802.01(B). The trust simply was not required to seek judicial approval of its discretionary decision to pay attorney fees. "A trustee, *without authorization by the court*, may exercise powers conferred by the terms of the trust and, except as limited by the terms of the trust, may exercise all of the following powers: (1) All powers over the trust property that an unmarried competent owner has over individually owned property." (Emphasis added.)   R.C. 5808.15. Moreover, a trustee shall take reasonable care to enforce claims of the trust and to defend claims against the trust. R.C. 5808.11. That almost always requires engagement of counsel. The trust grants that the co-trustees "shall have the following powers,* * * exercisable in the discretion of the Successor Co-Trustee(s): * * * To pay all expenses incurred in the administration of the trust, * * * and to employ or appoint and pay reasonable compensation to * * * attorneys[.]" (Trust Article XI(A)(9)).

{¶ 53} The second assignment of error contends only that the settlement of the Georgia litigation precludes payment of attorney fees from the trust. The trial court reasonably determined the settlement agreement does not. We cannot say that conclusion was an abuse of discretion. Accordingly we overrule the second assignment of error.


## VII. Conclusion

{¶ 54} The appellants had a fair and adequate trial on their tort claims where they did not request removal of the trustees, the trial court did not abuse its discretion by not removing the trustees and the plaintiffs did not convince the trial court, or us, that the

Georgia settlement prohibited the trust from paying attorney fees. Accordingly, we overrule both assignments of error and affirm the trial court's judgment.

FROELICH, J., concurs.

FAIN, J., concurring:

{¶ 55} I write separately to express my view that although prior court authorization is not required for a trustee's payment of expenses out of an inter vivos trust, the probate court and the general division of the common pleas court have concurrent jurisdiction to consider a claim, by a party having an interest in the trust, that a particular expenditure from the trust is not authorized. The trust agreement before us authorizes the trustee "to employ or appoint and pay *reasonable* compensation to * * * attorneys." (Trust Article XI(A)(9), emphasis added). Therefore, in my view, Martha could have presented a claim in the probate court that the compensation paid to attorneys from the trust was not reasonable in amount. I agree, however, that the reasonableness of the amount of the attorneys fees paid from the trust is not an issue presented by Martha's assignments of error.

{¶ 56} I concur in the judgment.

. . . . . . . . . . . . .

Copies mailed to:

David D. Brannon
Christopher R. Conard
Daniel J. Gentry
Hon. Dennis J. Langer